**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

FILED

OCT 26 2016

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| Edwin Miller, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **1:14cv978 (AJT/JFA)** |
| | ) | |
| Harold W. Clarke, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Edwin Miller, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that officials at the Sussex I State Prison ("SISP") violated his constitutional rights. Defendants, Sergeant Ricks, Officer Stephenson, Officer Saucedo, and Lieutenant Curry, have now filed a Motion for Summary Judgment, a memorandum of law, and affidavits to support their motion. Dkt. Nos. 64, 65, 66. Plaintiff received the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has filed a response. For the reasons that follow, defendants' Motion for Summary Judgment must be granted, and the claims against Officer C.W. Cook must be dismissed, without prejudice.

## I. Undisputed Factual Background

On February 15, 2014, at approximately 9:40 a.m., Correctional Officers Cook and Saucedo were escorting plaintiff to his housing unit, Building 3, from an outside recreational area that consisted of individual, fenced-in areas. Dkt. No. 65, Ex. I ("Saucedo Aff.") ¶ 4. Prior to being escorted to the housing unit, while he was still in the recreational area, plaintiff was restrained with leg irons and his hands were cuffed behind his back. Id. When Cook and Saucedo removed plaintiff from his recreational area, they locked the door. Id. As they began to escort plaintiff to

his housing unit, plaintiff attempted to pass a note to another offender who was in another recreational area nearby.  Id.  Cook directed plaintiff to stop and pulled plaintiff away from the other offender.  Id.  At that point, it appeared that plaintiff became agitated; however, Cook and Saucedo continued to escort plaintiff away from the recreational area to the housing unit.  Id.

Once inside the housing unit, as the officers were ascending a set of stairs with plaintiff, Cook called Lieutenant Curry and asked Curry to come to the housing unit.  Dkt. No. 65, Ex. III ("Curry Aff.") ¶ 4.  Curry told Cook that he was on his way, and he began to head toward the 3C pod together with Sergeant Ricks.  Id.

At the same time, before Cook and Saucedo arrived at plaintiff's cell, Cook retrieved a can of OC spray (a.k.a. pepper spray) from Correctional Officer Stephenson, who was working in the 3C/3D control room at that time.  Dkt. No. 65, Ex. II ("Stephenson Aff.") ¶ 4.  In Stephenson's Incident Report dated February 15, 2014, she stated, "Saucedo came to the booth to get a can of OC."  Id.; see also Stephenson Aff., En. A.  Stephenson does not specifically remember if she in fact gave the OC spray can to Saucedo or Cook, but she remembers handing it to one of them on that date.  Stephenson Aff. ¶ 5.

As the control room officer, Stephenson was responsible for opening and closing the cell doors when offenders entered and exited their cells.  Id. ¶ 4.  When Cook and Saucedo arrived at plaintiff's cell, 3C-02, with plaintiff, Stephenson opened the door, and the officers directed plaintiff inside his cell.  Saucedo Aff. ¶ 5; Stephenson Aff. ¶ 4.  Saucedo then removed plaintiff's leg irons, and Stephenson subsequently closed the cell door.  Id.  At that point, Saucedo opened the cell door's tray slot, and plaintiff backed up against the tray slot so that his handcuffs could be removed through the slot.  Id.  Saucedo held onto the handcuffs with his right hand and instructed plaintiff to lower himself a bit so that Saucedo could put the key into each of the cuffs in order to

2

remove them.  Id.  Plaintiff complied.  Id.  Saucedo then removed the handcuff from plaintiff's left hand and closed the cuff, holding the removed cuff in his right hand.  Id.; Dkt. No. 8 ("Am. Compl.") (acknowledging that "Officer Saucedo was having a hard time" removing the cuffs). Then, as Saucedo began to remove the right cuff, plaintiff jerked away, pulling Saucedo's right hand and arm into the tray slot.  Saucedo Aff. ¶ 5; Stephenson Aff. ¶ 4.  Saucedo instantly pulled plaintiff back toward the slot, gripping the removed cuff and instructing plaintiff to stop and give up the handcuffs, but plaintiff jerked away again, staying, "No."  Id.

As plaintiff was defying Saucedo's instructions, Saucedo continued to hold onto the removed left handcuff to prevent plaintiff from pulling the cuffs completely into the cell.  Id. Additionally, in order to regain control over plaintiff and the handcuffs, Saucedo told Cook to administer OC spray.  Id.  Cook sprayed plaintiff with OC spray through the tray slot.  Id.  The first two bursts of spray hit plaintiff's shirt while Saucedo continued ordering plaintiff to give him the handcuffs.  Id.  Again, plaintiff was defiant, stating "No" and pulling on the handcuffs away from Saucedo further into the cell.  Id.; see also Am. Compl. at 22 (plaintiff referred to this as a "tugging match").  Cook then administered a third burst of OC spray into the cell, this time spraying plaintiff in the eye area.  Id.  At that point, plaintiff complied with the officer's orders and allowed Saucedo to fully remove the handcuffs.  Id.  Once the OC spray had been administered and Saucedo had removed plaintiff's cuffs, Saucedo noticed that, due to rough contact with the top of the tray slot while plaintiff had been pulling on the cuffs, his right hand was cut and bleeding.  Saucedo Aff. ¶ 5.

During the course of the commotion, while on his way to the pod, Curry called Stephenson to find out what was happening.  Stephenson Aff. ¶ 5; Curry Aff. ¶ 4.  Stephenson informed Curry that Cook had administered OC spray in plaintiff's cell.  Id.  Soon after, Curry and Ricks arrived

at plaintiff's cell.   Saucedo Aff. ¶ 5; Curry Aff. ¶ 4.   Curry and Ricks removed plaintiff from his cell and escorted him to the shower for OC spray decontamination.   Id.   At the same time, Curry instructed Saucedo to go to the medical department to have his bleeding hand examined and treated. Id.   In addition, Curry asked plaintiff whether he wanted to go to the medical department, and plaintiff refused.   Curry Aff. ¶ 4.   Finally, Curry instructed Stephenson to call the power plant and have them turn on the exhaust system in 3C to decontaminate the pod.   Id.

At approximately 10:30 a.m., Ricks and Curry placed plaintiff back into his cell that had been decontaminated from the use of OC spray – the incident was effectively over.   Id.   Plaintiff alleges that Ricks and Curry knew that Cook and Saucedo had less than six (6) months of experience working as officers and should not have been authorized to work on the pod unsupervised.   Am. Compl. at 22, 31.

In his amended complaint, plaintiff makes the following relevant claims:

1. Saucedo failed to follow jail policy and procedure when he did not use a tether during the removal of plaintiff's handcuffs, and he used excessive force against plaintiff in violation of the Eighth Amendment.

2. Stephenson knew that Saucedo and Cook's actions violated policies and procedures, and Stephenson did nothing to prevent the use of excessive force, in violation of the Eighth Amendment.

3. Curry knowingly authorized Saucedo and Cook to work in the pod unsupervised even though they were inexperienced; therefore, he failed to protect plaintiff from the officers' actions and knew that the officers did not follow proper policies and procedures in regard to using OC spray and handling plaintiff.

4. Curry disregarded plaintiff's need for medical treatment in violation of the Eighth Amendment.

5. Curry violated plaintiff's First Amendment right to free speech by complicating and rendering impossible the investigation of the incident and by hindering the grievance process and making false allegations.

4

6. Ricks kept the officers' actions hidden and specifically failed to produce a report or inform the Watch Commander of the February 15, 2016 incident, as required by policies and procedures.

7. Ricks created a dangerous situation because he knew that Saucedo and Cook lacked the necessary experience to work in the pod without a senior officer present.

8. Ricks disregarded plaintiff's need for medical treatment in violation of the Eighth Amendment.

See generally Am. Compl. at 22-43.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita, 475 U.S. at 587.

### III. Analysis

#### a. Plaintiff's Claims Alleging Violations of Policies and Procedures Are Not Cognizable in a § 1983 Civil Action

To the extent plaintiff alleges that defendants violated policies and procedures, he is not entitled to relief on these claims. Throughout his Amended Complaint, plaintiff alleges that Saucedo and Cook violated Virginia Department of Corrections ("VDOC") policies and procedures, as they related to the February 15, 2014 incident. Additionally, he alleges that Stephenson, Curry, and Ricks were aware of these violations. However, violations of state policies and procedures are not actionable in § 1983 civil suits. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) ("Section 1983 was intended to protect only federal rights guaranteed by federal law, and not tort claims for which there are adequate remedies under state law."). Plaintiff's claims regarding violations of VDOC policies and procedures therefore fail, and defendants are entitled to summary judgment on these matters.

#### b. With Regard to Plaintiff's Eighth Amendment Claims, Defendants are Entitled to Summary Judgment

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison administrators from inflicting "unnecessary and wanton infliction of pain" on inmates. Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Because

6

the Eighth Amendment does not prohibit prison officials from all uses of force, only uses of force that actually inflict such unnecessary and wanton pain violate the Eighth Amendment. See, e.g., Whitley v. Albers, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [Eighth Amendment]."). When analyzing a claim of excessive force, therefore, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also Whitley, 475 U.S. at 320. "One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." Cherry v. Sherin, No. 3:10CV434, 2012 WL 664203 (E.D. Va. Feb. 28, 2012) (quoting Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994)).

The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with wantonness." Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (internal quotation marks omitted). These include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. Additionally, although not dispositive, the extent of injury suffered by the inmate is relevant to the subjective inquiry, as it "may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). By considering these factors, courts in specific cases can determine whether the force used could reasonably have been considered necessary, or whether it "evinced such wantonness with respect to the unjustified

7

infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321; see also Wilkins, 559 U.S. at 36.

### i. Saucedo Did Not Use Excessive Force Against Plaintiff

In this case, the uncontested evidence shows that Saucedo did not use excessive force against plaintiff. The incident began as Saucedo and Cook escorted plaintiff, who appeared agitated, back to his cell from the recreation area. When they first arrived at the cell, plaintiff complied with the removal of his leg irons and Saucedo's instructions to squat down so that Saucedo could remove his handcuffs through the tray slot. However, after one cuff was removed, plaintiff became noncompliant and aggressively resistant. As Saucedo attempted to remove plaintiff's second handcuff, plaintiff jerked away into his cell, yanking Saucedo's hand and arm into the tray slot.

Plaintiff's own admissions actually weaken his Eighth Amendment claim against Saucedo. See Am. Compl. at 34, 38. Plaintiff admits that Saucedo was having difficulty in removing the handcuffs, and as a result Saucedo had to tug and pull on the cuffs, which caused pain to plaintiff. Id. at 38 (admitting that "defendant Saucedo was having a hard time removing plaintiff's handcuffs, and begun to pull and tug on the handcuff causing plaintiff some pain"). Plaintiff then alleges that as one handcuff became free, plaintiff moved away from the cell door and turned around, and so Saucedo pulled plaintiff's arm by the handcuff back into the tray slot in order to regain control over plaintiff and the handcuffs. Plaintiff alleges that he pulled his arm back at that point, thereby admitting that he actively resisted Saucedo's effort to remove the left handcuff. See Am. Compl. at 22 (plaintiff referred to this as a "tugging match"). Aside from plaintiff's conclusory allegations and assertion that "[t]he use of OC wasn't needed as plaintiff posed no immediate threat," there is absolutely no evidence that plaintiff was calm and in control or that Saucedo or Cook acted with

8

malice or sadistic intent to cause harm to plaintiff.   Hence, Saucedo used only the minimal amount of force necessary to maintain control over plaintiff and to effectively remove his handcuffs, and he is entitled to summary judgment on plaintiff's Eighth Amendment claim.

ii. <u>Stephenson Cannot be Held Liable Under the Theory of Bystander Liability</u>

Plaintiff claims that Stephenson watched Saucedo and Cook use excessive force against him and failed to prevent the use of such force.   "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."   <u>Randall v. Prince George's Cty., Md.,</u> 302 F.3d 188, 204 (4th Cir. 2002) (footnote omitted).   However, as a prerequisite to establishing bystander liability, a plaintiff must prove a violation of a constitutional right by the fellow officer.   <u>Id.; see also Willis v. Oakes,</u> 493 F.Supp.2d 776, 784 (W.D. Va. 2007). For the reasons stated above, it is clear that Saucedo and Cook did not violate plaintiff's Eighth Amendment rights, so Stephenson cannot be held liable under this theory of bystander liability for an Eighth Amendment violation.

iii. <u>Curry and Ricks Did Not Fail to Protect Plaintiff from the Use of Excessive Force</u>

Plaintiff claims that Curry and Ricks, as supervisors, knowingly authorized Cook and Saucedo to work in the pod unsupervised even though they were inexperienced, thereby creating a dangerous situation for plaintiff in violation of the Eighth Amendment.   In order to establish a claim for cruel and unusual punishment due to conditions of confinement, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need, that is, one causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need.   <u>Farmer v. Brennan,</u> 511 U.S. 825, 834 (1994); <u>Wilson v. Seiter,</u> 501 U.S.

9

294, 198 (1991). To meet the first prong, plaintiff must establish facts sufficient to show that the condition complained of was a "sufficiently serious" deprivation of a basic human need. Farmer, 511 U.S. at 834; see also Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003). Only extreme deprivations will make out an Eighth Amendment claim, and it is plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, plaintiff must establish facts sufficient to show that defendants knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that they drew that inference, and then disregarded the risk posed. Farmer, 511 U.S. at 837; see also Saunders v. Buckner, Case No. 1:07cv501 (LMB/JFA), 2008 WL 4104439, at *6 (E.D. Va. Aug. 28, 2008), aff'd, 350 F. App'x 825 (4th Cir. 2009) (internal quotations omitted) ("A prison official shows deliberate indifference if he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Assuming, arguendo, that plaintiff has satisfied the first prong of the test, plaintiff has failed to establish that Curry and Ricks were deliberately indifferent to his safety. Plaintiff alleges that at approximately 8:45 a.m., Curry was inside the control room on the pod and saw Saucedo and Cook remove plaintiff from his cell to go to the recreation area without using a tether to maintain control over him. However, plaintiff has failed to assert that Curry or Ricks knew and disregarded the fact that Saucedo and Cook's failure to use the tether presented a risk to plaintiff's safety. Aside from his conclusory allegations about violations of his Eighth Amendment rights, plaintiff does not

10

allege any other facts suggesting that he was subject to an excessive risk to his safety by Saucedo and Cook merely working in the housing unit unsupervised, nor does plaintiff allege that Curry and Ricks knew of and disregarded any such risk.   Furthermore, for the reasons stated above, Saucedo and Cook's use of force to maintain control over plaintiff, while he was noncompliant and actively resisting efforts to have his handcuffs removed, was not excessive.   Therefore, Curry and Ricks did not fail to protect plaintiff from excessive force, and they are entitled to summary judgment on plaintiff's claim.

### c. Curry and Ricks are Entitled to Summary Judgment on Plaintiff's Claim That They Failed to Investigate or Report the Incident

Plaintiff erroneously alleges that Curry violated his First Amendment right to free speech by complicating the investigation of the incident and hindering the grievance procedure through false allegations.   Plaintiff additionally claims that Ricks failed to report the incident or inform the Watch Commander of the incident and that he kept the officers' actions hidden.

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Additionally, plaintiff does not have a constitutional right to an investigation of the incident.  See e.g., Sprinkle v. Barksdale, No. 7:08CV00430, 2009 WL 1956370, at *5 (W.D. Va. July 6, 2009); Phillips v. Pocahontas State Corr. Ctr., Case No. 7:09cv00098, 2009 WL 890475, at *4 (W.D. Va. Mar. 31, 2009); Moore v. Gregory, Case No. 7:06cv00546, 2007 WL 1555774, at *8 (W.D. Va. May 22, 2007), report and recommendation adopted, Case No. 7:06cv00546, 2007 WL 1747145 (W.D. Va. June 15, 2007).   Because plaintiff does not have a constitutional right to the grievance procedure or to an investigation of the incident, Curry and Ricks are entitled to summary judgment on these claims.

11

### d. Curry and Ricks Were Not Deliberately Indifferent to Plaintiff's Serious Medical Needs

Plaintiff asserts that Curry and Ricks disregarded his need for medical attention. To establish an Eighth Amendment claim for inadequate medical care, a plaintiff must show facts sufficient to show that jail officials were deliberately indifferent to the plaintiff's serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must assert two distinct elements to state a claim upon which relief can be granted. First, he must establish a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must establish deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). To do so, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851 (citations omitted). The Fourth Circuit has held that in order to bring a medical treatment claim against non-medical prison officials, an inmate must show that those officials were personally involved in the denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Id. at 851-54.

12

After plaintiff was sprayed with OC spray, his handcuffs were removed, he was immediately taken to the shower, and his cell was decontaminated. Despite the fact that defendants appear to have adequately addressed plaintiff's discomfort, the Court will assume, arguendo, that plaintiff suffered from a serious medical need. However, the uncontested evidence in this case establishes that defendants Curry and Ricks were not deliberately indifferent to any of plaintiff's needs. The evidence in the record shows that plaintiff refused medical treatment when Curry offered it to him, as Curry and Ricks escorted plaintiff to and from the shower after he had been sprayed with OC spray. Curry Aff. ¶ 4. Accordingly, Curry and Ricks were not deliberately indifferent to plaintiff's serious medical needs, and they are entitled to summary judgment on this claim.

### e. Defendants are Afforded Immunity and Cannot be Held Liable

Because the Court has made a determination on the merits of plaintiff's claims, a discussion as to defendants' immunity argument is not necessary.

### IV. Motion for Default Judgment

Plaintiff has filed a Declaration for Entry of Default, which will be construed as a Motion for Default Judgment against defendant Cook. Dkt. No. 77. By Order dated October 30, 2015, this Court directed service upon defendants Ricks, Cook, Saucedo, and Stevens.[1] Dkt. No. 14. At that time, plaintiff was advised that if the Court was unable to effect service on any of the named defendants through the October 30, 2015 Order and the defendant was not otherwise served within 120 days of filing, that the claims against that defendant would be dismissed from the instant action

---

[1] Counsel for defendants notified this Court that there was no "Officer Stevens" employed at Sussex I on February 15, 2014. At that time, Officer Stephenson was the control booth officer in plaintiff's housing unit on that date. Therefore, the undersigned counsel waived service and entered an appearance for Officer Stephenson in place of "Officer Stevens." Dkt. No. 32

without prejudice.[2]  Id.; see also Fed. R. Civ. P. 4(m).   Over 320 days have passed since October 30, 2015, and defendant Cook has never been served. Because Cook has not been served, plaintiff's motion must be denied, and the claims against him will be dismissed without prejudice.

## V. Conclusion

For the foregoing reasons, the claims against Cook will be dismissed, without prejudice, and the remaining defendants' Motion for Summary Judgment must be granted.   An appropriate Judgment and Order shall issue.

Entered this _26_ day of _October_ 2016.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge

---

[2] For purposes of calculation, the complaint was deemed as filed on the same date as this Order, October 30, 2015.